**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: June 28, 2023[1]
Date Decided: August 1, 2023

Dean A. Campbell, Esquire
Law Office of Dean A. Campbell, P.A.
703 Chestnut Street
Milton, DE 19968

Sean A. Meluney, Esquire
Stephen A. Spence, Esquire
Meluney Alleman & Spence, LLC
1143 Savannah Rd., Suite 3-A
Lewes, Delaware 19958

Re: *Candy Williams and Jackie Ferris, v. John M. Lester, Jr. et al.*,
C.A. No. 2023-0042-SG

Dear Counsel:

Scientists have found that the octopus is bizarrely adept at navigating mazes.[2] Its protean and malleable body—together with a keen brain distributed throughout its nervous system, so that each arm can think independently—allows it to make short work of finding any exit that a biologist's apparatus has left it.[3] But the octopus has nothing on the contortions exhibited in Plaintiffs' attempt to establish jurisdiction here.

---

[1] Following the completion of briefing on Defendants' motion to dismiss, I asked the parties to submit supplemental briefing on the issue of subject matter jurisdiction. Upon reviewing both sets of briefs, I determined that oral argument was not necessary. I consider the matter fully submitted as of June 28, 2023, when the Court received the parties' supplemental briefs.
[2] *See, e.g., Giant Maze Experiment – Octopus VS Big Water Labyrinth*, OctolabTV (May 4, 2020), https://octolab.tv/giant-maze-experiment-octopus-vs-big-water-labyrinth/.
[3] *Id.*

# I. BACKGROUND

This matter involved a contract between the Plaintiff lot owners and the Defendant contractors for the latter to manage construction of a new house for the Plaintiffs. This Defendants did. The contract appears, from the complaint, to be a cost-plus-$75,000-fee contract (the "Contract"), and it provided for an estimate of building costs, all-in, of $414,000.[4] Instead, the project cost $538,000.[5] The Plaintiffs allege that the Defendants breached duties to maintain adequate records and to forgo markups of products and services bought or subcontracted for, both of which duties the Contract specifically provided for.[6] They seek damages for this breach.

The matter is before me on the Defendants' motion to dismiss.[7] Defendants primarily rely on the doctrine of *res judicata*, arising from the following actions alleged in their brief. In September of last year, the Plaintiffs brought an action on the same facts here, in Superior Court.[8] On December 16, oral argument was held on the Defendants' motion to dismiss the Superior Court action.[9] At argument, it appeared that the Superior Court was dubious of the merits of the contract claim,

---

[4] Verified Compl. for Breach of Fiduciary Duty and an Accounting (the "Compl.") ¶ 6, Dkt. No. 1.
[5] *Id.* ¶ 10.
[6] *Id.* ¶ 7, 17, 19.
[7] Defs.' Mot. to Dismiss, Dkt. No. 7.
[8] Defs.' Opening Br. in Supp. of their Mot. to Dismiss (the "Opening Br.") 2, 4, Dkt. No. 7.
[9] *Id.* at 5.

resulting in the Plaintiffs having an epiphany: their claim was "really" equitable in nature, and they orally requested the Superior Court grant leave to transfer the matter to Chancery.[10] The Superior Court asked the parties for supplemental briefing on the adequacy of legal remedies.[11] Both sides submitted the requested briefing on January 17, 2023.[12] On the same day, the Plaintiffs filed this action in Chancery;[13] thus, there were, as of that date, two actions seeking damages relief: one in Chancery and one in Superior Court.

On February 25, the Superior Court delivered its opinion on the motion to dismiss.[14] It found (1) that adequate relief was available at law, and therefore it would not transfer the matter to Chancery, and (2) that the Defendants' motion to dismiss for failure to state a claim should be granted with prejudice.[15] No appeal of this ruling was filed, and the Superior Court's decision is now final.[16]

The Defendants have filed the motion to dismiss currently before me, relying on *res judicata* (as well as failure to state a claim). I asked for

---

[10] *Williams v. Lester*, 2023 WL 587943, at *1 (Del. Super. Ct. Jan. 25, 2023) (the "Super. Ct. Decision").
[11] *Id.*
[12] Opening Br. at 5.
[13] *Id.*, Ex. 4 ¶ 12.
[14] *See* Super. Ct. Decision.
[15] *Id.*
[16] *See* Opening Br. at 6 (pointing out that the period to file an appeal has run); *see also* Pls.' Answering Br. to Defs.' Opening Br. in Supp. of their Mot. to Dismiss (the "Answering Br."), Dkt. No. 8 (failing to address this issue); *Emerald Partners v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived") (citation omitted).

supplemental briefing on whether Chancery jurisdiction exists here, which the parties have helpfully provided.[17] The *res judicata* defense appears compelling on the facts stated above; however, I do not, and should not, reach it if subject matter jurisdiction is lacking. Accordingly, I address that jurisdictional issue here.

## II. ANALYSIS

In impressively octopoid fashion, the Plaintiffs have argued that what appears to be a simple action for breach of a contract between homeowner and contractor is really a matter in the core of equity jurisdiction.[18] They argue that the contract in question is "unusual," even "bizarre," apparently thus requiring equitable intervention.[19] They argue that the relationship between contractor and homeowner is necessarily one of special trust, or that the particular contract in issue creates such a special relationship, making the contractor a classic fiduciary for his counterparty.[20] They point out that amounts held by contractors are, by statute, held for the benefit of subcontractors who "furnish labor or material" for construction,[21] and allege that the homeowners here must be considered subcontractors.[22]

---

[17] *See* Pls.' Suppl. Br., Dkt. No. 14; Defs.' Suppl. Br., Dkt. No. 15.
[18] *See* Answering Br.; Pls.' Suppl. Br.
[19] Answering Br. at 7, 14.
[20] Pls.' Suppl. Br. at 2-3.
[21] *See* 6 *Del. C.* § 3503.
[22] Answering Br. at 13-14.

4

Plaintiffs further allege that, because the Contract called for the contractor to keep a separate account for their project, they are entitled to an equitable accounting.[23] Finally, Plaintiffs argue that the entity with whom they contracted, John Lester d/b/a Banner Custom Builders, is really Banner Custom Builders and Designers, LLC, a defunct entity, and thus equity must piece the corporate veil.[24]

These sinuous recharacterizations of a straightforward contract action for damages are, in a sense, a fine example of the pleader's art. I examine them below and conclude, however, that fervid pleading does not an equitable action make.

### A. Breach of Fiduciary Duty (Count I)

It is axiomatic that where a relationship is established and cabined by a contract, a damages action for its breach sounds in contract.[25] The parties here were arms-length counterparties in a contract for services. Nonetheless, Plaintiffs' first cause of action is for breach of a *fiduciary* duty created by the Contract.[26] But nothing in the Contract provides that the Plaintiffs were able to rely on the contractor as a fiduciary.[27] There was no special relationship of trust between these parties, nor did they share a common goal that could imply reliance in

---

[23] Compl. ¶¶ 22-26.
[24] *Id*. ¶¶ 27-33.
[25] *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).
[26] Compl. ¶¶ 14-21.
[27] *Id.*, Ex. A at 2-4.

5

equity.[28]  The Defendants' goal was to earn a contractual fee, $75,000, by managing the construction efforts of subcontractors; the Plaintiffs' goal was the erection of a home.  According to the Plaintiffs, the Defendants overran the estimated cost of the home, presumably by taking funds to which Defendants were not entitled and comingling funds or costs required by contract to be kept separate.[29]  If so, the remedy is straightforward and available at law in an action for contract damages.  While an action for breach of fiduciary duty is inherently equitable and, if well-pled, conveys jurisdiction on this Court, the Plaintiffs' breach-of-fiduciary-duty count is nothing more than an artful repleading of a contract claim, for which damages, if merited, are fully available at law.

## B.  Equitable Accounting (Count II)

The Plaintiffs allege that they are entitled to an accounting.  Despite the fact that "accounting" comprises the entirety of Plaintiffs' second count,[30] an accounting is not a cause of action sounding in equity.[31]  It is an equitable remedy

---

[28] A threshold requirement of a special, fiduciary-like, relationship is an alignment of interests. *See, e.g., Tr. Robin, Inc. v. Tissue Analytics, Inc*., 2022 WL 4545174, at *3 (Del. Ch. Sept. 29, 2022) (assessing the existence of a special relationship in the equitable fraud context).  In a true fiduciary relationship, this mere alignment is replaced by the fiduciary's duty to protect the beneficiary's interests. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co*., 901 A.2d 106, 113 (Del. 2006).  The "common goal" of building a house, argued for by Plaintiffs, falls short of either requirement.  Answering Br. at 14.
[29] Compl. ¶¶ 17-21.
[30] *Id*. ¶¶ 22-26.
[31] *See Rhodes v. Silkroad Equity, LLC*, 2007 WL 2058736, at *11 (Del. Ch. July 11, 2007); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 2130607, at *11 (Del. Ch. Aug. 26, 2005).

by which a fiduciary may be caused to account for property subject to trust.[32]  But here, as stated above, the relationship between Plaintiffs and Defendants is that of contractual counterparties, not beneficiary and fiduciary.  There is no basis in the facts pled to require an equitable accounting.

Plaintiffs' argument appears to be that the Defendants were bound by contract to keep a separate account for funds from draws, but did not, causing the Plaintiffs to suffer damages.[33]  But, if so, these are contractual claims, and do not implicate the equitable remedy of accounting.  Plaintiffs, at law,[34] are entitled to plenary discovery of Defendants' accounts and to show damages for diverted or overbilled amounts.  Plaintiffs conflate the breach of a contractual promise to maintain a separate account and the equitable remedy of an accounting.  Relief here does not require an equitable accounting.

### C. Piercing the Corporate Veil (Count III).

I confess that I do not entirely understand this claim.  Where a corporate entity exists only as a vehicle for fraud, equity, if required, can pierce the metaphorical veil of limited liability, and, where appropriate, find the principals liable for obligations of the entity.[35]  Here, Plaintiffs allege that they entered a

---

[32] *See McMahon v. New Castle Associates*, 532 A.2d 601, 605 (Del. Ch. 1987).
[33] Compl. ¶¶ 14-21.
[34] Supposing, of course, that they have pled a claim on which relief in damages may be had.
[35] *See, e.g., Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) (discussing the factors considered in a veil piercing analysis).

contract with John Lester d/b/a Banner Custom Builders ("Banner").[36] They allege that Banner was not a registered business or a Delaware entity.[37] The substantive counts of the complaint, discussed above, seek to impose liability on Lester d/b/a Banner.

The Plaintiffs allege that a similar-sounding LLC, Banner Custom Builders and Designers (the "LLC"), was formerly used by Lester as a business entity, but was defunct at the time the Contract was formed.[38] There is no allegation that the Plaintiffs about the LLC when entering the Contract, let alone relied on the fact in contracting. They have alleged no fraud here based on the lapsed existence of the LLC. They have not even argued that veil-piercing of the LLC (or the fictitious entity Banner, to the extent its principal claims that he is somehow entitled to limited liability) are necessary for them to recover contract damages. Thus, the veil-piercing count does not state an equitable claim.

### III. CONCLUSION

The Plaintiffs try to repackage an obvious contract claim as equitable, presumably to prize the doors of equity and avoid the results of the Superior Court decision at law. Despite the Defendants' request, I cannot apply *res judicata* here, because the parties have identified no non-pretextual equitable claim and have

---

[36] Compl. ¶¶ 2, 5.
[37] *Id.* ¶ 2.
[38] *Id.* ¶ 3.

failed to allege the need for an equitable remedy. Therefore, and because no statutory basis for jurisdiction is alleged, this Court of limited jurisdiction lacks puissance to apply *res judicata*, or otherwise act. Accordingly, this action is dismissed with leave to refile in Superior Court pursuant to 10 *Del. C.* § 1902. That court, of course, may apply *res judicata* as it finds appropriate.

A suitable Order is attached.

Sincerely,

*/s/ Sam Glasscock III*
Vice Chancellor

9

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

CANDY WILLIAMS, and JACKIE FERRIS,

    Plaintiffs,

      v.

JOHN M. LESTER, Jr. d/b/a BANNER CUSTOM BUILDERS, and BANNER CUSTOM DESIGNERS,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2023-0042-SG

## ORDER DISMISSING THE COMPLAINT WITH LEAVE TO TRANSFER

WHEREAS, on January 17, 2023, Plaintiffs Candy Williams and Jackie Ferris filed a Verified Complaint (the "Complaint");

WHEREAS, on June 13, 2023, the Court raised the issue of equitable jurisdiction;

WHEREAS, on June 28, 2023, the parties submitted supplemental briefing on subject matter jurisdiction;

AND NOW, this Tuesday, August 1, 2023, upon review of the Complaint together with the parties supplemental briefing, IT IS HEREBY ORDERED for the reasons described in the accompanying letter opinion that the Complaint is DISMISSED in its entirety with leave to transfer subject to 10 *Del. C.* § 1902.

/s/ Sam Glasscock III
Vice Chancellor